## MALLERY v. FRYE.

---

EVIDENCE; COMPETENCY OF WIFE TO TESTIFY; FIRE INSURANCE; OWNER-SHIP OF INSURED PROPERTY; POLICY, CONDITIONS OF; INSURANCE BROKERS; NEGLIGENCE.

1. A wife is competent to testify, under Sec. 1068, Code D. C., in a suit by her husband where the trial occurs after the code went into effect, although the cause of action accrued and the suit was commenced before that time, as alterations in the law of evidence which only remove existing restrictions upon the competency of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the legislature, upon the ground of public policy, may regulate at pleasure.
2. Where a policy of fire insurance provides that it shall be void if the interest of the insured be other than unconditional and sole ownership, and it appears that the property was held under a deed conveying the title to the insured and his wife jointly, it is competent for the wife to testify, it being against her interest, that the purchase money of the property was furnished by her

husband, and that she had no beneficial interest in the property whatever.

3. And such a condition as to ownership of the insured property is satisfied by the equitable ownership by the husband of the property, his interest being unconditional and sole, and the policy not requiring that the insured shall be seized of the legal title in fee simple; especially as any doubt in respect of the meaning of the policy is to be resolved in favor of the insured.

4. A policy of insurance on a " two story frame building " is not avoided by testimony that the insured property was a story-and-a-half house, where there is no evidence that the half story did not make the building a " two-story house " either in common parlance or within the established usage of underwriters, and no attempt to show that the alleged misdescription affected the character of the risk or influenced the insurer in determining its acceptance and fixing the rate.

5. Insurance brokers are charged with the exercise of reasonable care and skill in making inquiries and obtaining information concerning the responsibility of the insurer with whom they place the risk and are liable for any loss occasioned by the want of such care.

6. While the fact that an insurance company with which a broker placed insurance for a customer was not represented by any member of the board of underwriters in this District, may not constitute a material element of negligence in an action by the customer against the broker for negligently placing his insurance, its inclusion in an instruction to the jury, otherwise correct, is not error prejudicial to the defendant.

7. Failure by an insurance broker to make any inquiry or to exercise any care in ascertaining whether a foreign company with which he places insurance for a customer has complied with the laws of this District requiring nonresident companies to undergo examination of their affairs and to appoint resident agents upon whom process and notice may be served, will render the broker liable for damages suffered by the customer without actual loss through proof of the insolvency of the company; and it is immaterial that such a violation of the law does not. make void a policy so placed, and that the customer may thereafter recover upon the policy if he can discover the domicile of the company, especially if its existence, anywhere, as a corporate body is a matter of serious doubt.

No. 1239. Submitted December 3, 1902. Decided January 20, 1903.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia.

upon the verdict of a jury in an action against insurance brokers to recover damages for negligently placing fire insurance.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This action was begun by James H. Frye to recover damages against Allen W. Mallery and others for loss sustained through their negligence in the performance of an undertaking to procure a policy of fire insurance upon a house of the plaintiff that was subsequently burned.

The declaration is in six counts, in each of which it is alleged that plaintiff was, on May 20, 1898, and before, the owner of a two-story frame building on a farm in Fairfax County, Virginia; that defendants were copartners under the name and style of Allen W. Mallery and Company, and engaged in the business of real estate and insurance brokers in the city of Washington; that plaintiff was approached by the defendants' solicitor and asked to take a policy on said house; that relying upon the defendants' representations, plaintiff agreed to let them obtain a policy for $3,000 thereon; that he received from defendants a policy for $3,000, purporting to have been issued by the General Fire Insurance Company, of Paris, France, covering said house for one year, for which plaintiff paid to defendants the required premium of $15; that about February 11, 1899, the said house accidentally took fire and was totally consumed; that defendants were notified of said loss; but plaintiff has never received the indemnity contracted for, because the said insurance company has no existence, and the policy is worthless. Whereby plaintiff sustained damage to the value of his house. The first, second, fourth, and fifth counts were based upon fraud and deceit practiced by defendants; the third and sixth upon negligence only.

Issue was joined on all the counts and the jury returned a verdict for defendants on the first, second, fourth, and fifth counts, and for the plaintiff on the third and sixth.

It appears that the policy was issued as stated in the decla-

ration. It is in the standard form and contains the following clauses upon which the defendants deny that any liability ever accrued thereunder: " This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or, if the interest of the insured in the property be not truly stated therein; * * * or, if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

This policy purported to have been executed by the director general of the General Fire Insurance Company, of Paris, France, and by Frank W. Anthony as " Mgr. American business." At the extreme end of the policy this indorsement appears: " From Newton & Newton, 802 F." On the back, the following was stamped in red ink: Allen W. Mallery & Co., real estate, insurance, 620 F St. N. W., Washington, D. C.

Anna W. Frye testified that she was called upon by Mrs. Owens and asked to insure any property she might have; that she called her husband and suggested that this property be insured: he agreed to take a policy from Mrs. Owens; that afterwards Mrs. Owens brought her the policy, labeled as aforesaid, and she paid her the premium, $15, which money was furnished by her husband. Mrs. Owens represented that she would obtain a policy through defendants who were reputable insurance agents, etc.

When the fire occurred witness notified defendants, who said they would write to the company. The policy was subsequently delivered to them, and they inquired about the fire. Witness told what she knew and subsequently returned with the party who was on the place when the fire occurred, and who related the circumstances to one of the defendants. Later, defendants said they had not heard from the company, but were trying to get some information. On the last visit to defendants they said they had found out that a party by the name of Anthony had been arrested for getting out

fraudulent policies; that his trial was going on then, " and further that this man had been arrested in December before the fire for issuing fraudulent policies." Another witness testified that Mr. Mallery told him that defendants had only got a small part of the commission on the premium — " about $1.75 or $1.37, or something like that."

James H. Frye, the plaintiff, testified that he had a conversation with Mrs. Owens, the solicitor of insurance, who told him that Mr. Mallery was one of the underwriters of the District, a good man, and perfectly responsible. Nothing was said about any particular company.

In regard to the character and value of the house he testified that the house had eleven rooms; " it had two stories, or rather a story and a half, nine rooms on the lower floor and two in the upper story;" and was worth $3,000. Other evidence was introduced as to the size, age, character, and value of the house, tending to corroborate the foregoing.

As regards the ownership of the house and the land upon which it stood, the plaintiffs offered the following testimony substantially. The farm was purchased of one Haislip and deed made by him. This deed had not been recorded and could not be produced, but was shown to have conveyed the land to both James H. Frye and his wife Anna W. Frye. The latter said that Mr. Frye's money paid for the farm; that he did not give it to her; that certain lots in Washington were exchanged for it; that those lots had been purchased by her husband but conveyed to her for his convenience, and were not given to her; that $500 in cash was paid, which was raised by her note and mortgage on the M street property; that Mr. Frye closed the trade and she thought had the deed; that the deed was made to both, her name being inserted for her husband's convenience. This evidence was admitted over the objection of the defendants, on the ground of irrelevancy and that the title could not be changed by parol testimony, and exception was taken.

James H. Frye testified, that his money paid for the property, though he and his wife are mentioned as the purchasers in the deed; that $500 were paid in cash and the remain-

der of the consideration in property situated in South Washington; that the money and property given for the farm were wholly his own, and that he had received nothing from his wife. This last was objected to because it is immaterial in view of the recitals of the policy in respect of title, but objection was overruled.

Robert E. Sullivan, local manager for the N. W. Fire Insurance Co., testified that he knew Anthony by reputation as a " wild cat insurance operator;" that his reputation among insurance brokers in 1898 was bad, " for circulating policies that were not good in companies that were not responsible." Witness had heard of the General Insurance Co., of Paris, France, as among unlicensed companies. He said there was a custom among insurance men in Washington in regard to stamping policies; the person issuing the policy puts his stamp upon it; " the stamp is put on to indicate where the policy comes from."

William D. Montague, who had kept the District records of licenses for twenty-five years, testified that he did not know the company issuing the policy and had never heard of it; it had never applied and had never been licensed to do business in the District of Columbia. This evidence was objected to also.

Defendants introduced, first, evidence tending to contradict plaintiffs respecting the condition and value of the house, some of these putting it very low. One said it was " a flat, one-story and a half house; upstairs was nothing but a garret, which was not plastered, with flooring over part of it only; that in the middle of the garret a man could walk." It appears from the testimony generally that it was an ancient colonial house, covering ground about 36 feet by 55 feet, with four chimneys built of brick which had probably been brought from England.

They then introduced evidence relating to the issue of the policy. Mrs. Owens said, that she had been an insurance solicitor for some years; that she knew the Fryes and spoke to Mrs. Frye about insurance at the stand in the market which she and her husband kept; that she had no conversa-

tion with Mr. Frye; that she did not say she was the agent of Mr. Mallery, nor was she in the employ of defendants at that time; that after Mrs. Frye gave her the application for insurance (a paper which was not in evidence) she took it to defendants' offices and saw Miss Beall, the clerk who had charge of insurance; that Miss Beall said it would be impossible to place it in one of their companies. On cross-examination she said she was a licensed solicitor; that she had no understanding with defendants to place all the business she could secure, but took her business there because her husband had been a friend of Mr. Mallery and she had confidence in him; that for business taken to them, defendants paid her the usual commission of 15 per cent.

Miss Beall corroborated Mrs. Owens as to what occurred between them, and said that Mrs. Owens requested that the policy be placed elsewhere; that she (witness) sent the application to Newton & Newton, who sent the policy in suit which was then given to Mrs. Owens; that witness knew nothing of the company, but as it came from respectable brokers, thought it all right and made no inquiry.

Lawrence O. Mallery testified that he was a brother of Allen W. Mallery; that he is a real estate broker and has a desk in defendant's office; that he went to Newton's at Miss Beall's request to see if they would write the policy, and later got it from one of that firm. Allen W. Mallery testified that he was a member of underwriters board in 1898; that his only arrangement with Mrs. Owens was to pay her the same commission — 15 per cent. — as to any one else who might bring them business; that Mrs. Owens told him of the application and he said his companies did not write such policies; that after repeated solicitation he told Miss Beall that she might try to get a policy for her, and heard nothing more until after the fire; that when notified, he notified Newton & Newton and then saw Mrs. Gresham who had obtained the policy from Mr. Anthony; that up to the time of the policy issue he had no information whatever in reference to Anthony or the standing of the insurance com-

pany; that he first heard of the insolvency of the company and Anthony's standing in latter part of September, 1899.

On cross-examination he said that on May 20, 1898, he did not know of the insurance company; that defendants do no business except in their own companies and had no use for general knowledge of the standing of other companies; that they are not engaged in brokers' business; that he did not see the policy until after the fire, but had signed a check to Newton & Newton for $13.50.

Henry Wells then testified that he was a member of board of underwriters and had been in business six years, representing three well-known companies; that he had never heard of the General Fire Insurance Company of Paris, nor did he ever hear of Anthony.

Richard Knight, one of the defendants, said that he had been requested by Mr. Mallery, after the loss, to find out something about Anthony; that he had never heard of him or his company before that time; that upon inquiry he heard that Anthony was under arrest or in prison.

Thomas Gordon, also a defendant, said that prior to the fire he had never heard of Anthony or the company.

The jury found for the plaintiff in the sum of $700, and judgment was rendered thereon.

*Mr. J. A. Maedel* and *Mr. John Ridout* for the appellants.

1. The appellee had not such a title to the property insured as entitles him to maintain this action under the terms of the policy. Appellee's interest is not unconditional and sole ownership, nor has appellee the fee simple title to the ground. The deed to appellee and his wife may create a joint tenancy or a tenancy by the entirety, in both of which cases there is the right of survivorship. Nor is the interest of the insured in the property truly stated in the policy. This proposition is sustained by the following authorities: *Wineland* v. *Insurance Co.,* 53 Md. 276; *Hartford Fire Ins. Co.* v. *Keating,* 86 Md. 130; *Waller* v. *Northern Assur. Co.,* 10 Fed.

Rep. 232. See also *Insurance Co.* v. *Lawrence,* 2 Pet. 25,
47, 48, 49; *Ætna Ins. Co.* v. *Resh,* 40 Mich. 241.

The law has been settled in this jurisdiction by the de-
cision of this court in the case of *Dumas* v. *Insurance Co.,*
in 12 App. D. C. 245.

2. In the case at bar no attempt was made to meet the
objection that the appellee has not the fee-simple title to
the land on which the insured building stood. To meet the
objection that the appellee's interest was not unconditional
and sole ownership, Mrs. Frye was permitted, against the
objection of appellants, to testify in behalf of the appellee
that the appellee's money bought the farm, and her husband
never gave her the lots in Washington or the Gunston farm;
and the appellee was permitted, against appellants' objec-
tion, to testify that his money paid for the farm, and that
the whole consideration for the farm was represented by
property or money that was wholly his own. The admission
of this testimony was error. *McCartney* v. *Fletcher,* 11 App.
D. C. 1.

3. Was the property destroyed the property described in
the policy? The policy insures a two-story frame building.
The appellee testifies that the house was a story and a half.
Thomas M. Haislip, witness for the defendants, testifies
that the house was one story and garret. William W. Hais-
lip testifies that the house was a story and a half. James A.
Haislip testifies that the house was a story and a half. George
W. Haislip testifies that the house was a one story and gar-
ret. Thomas F. Chapman testifies that the house was what
you call a one-story house. All of the Haislip witnesses were
former owners of the property in question. Not one witness
was produced who testified that the house was a two-story
house. The point made is not that the risk is greater for a
two-story house than for a one-story-and-attic or story-and-
a-half house. Nor does the suggestion, made by appellants'
counsel to the court below, that the policy provides against
liability beyond the actual cash value of the property at
the time of the loss, cover the point. The difficulty is that
the minds of the parties to the contract of insurance never

met, and the insurance company would not be liable, and consequently neither should the appellants. See *Fowler* v. *Ætna Fire Ins. Co.,* 6 Cow. 673; *Thomas* v. *Commercial, etc., Ins. Co.,* 162 Mass. 29; *Jackson, Receiver,* v. *Insurance Co.,* 33 Hun, 60; *Goddard* v. *Insurance Co.,* 108 Mass. 56, 58, 59.

4. The cause of action as set forth in the first, second, fourth, and fifth counts, is based upon the alleged fact that the policy issued to the appellee was fraudulent and of no value, but as to these counts the jury found in favor of the appellants. The third and sixth counts are based upon negligence and charged that no such company as the General Fire Insurance Company, of Paris, France, is in existence. Appellants submit that before recovery can be had in this suit upon any counts of the declaration filed herein, the plaintiff must prove that said fire insurance company did not exist, or if it did exist, that the same was insolvent when the policy was issued and such insolvency was known by the appellants; otherwise, the appellee could not have been damaged by any action of the appellants. No evidence whatever was offered to show either that the company did not exist, or that if it did, that it was insolvent.

If the insurance company does exist, as it would appear from the record, appellants cannot be liable under any aspect of this case unless said company is insolvent. If the company is not insolvent, appellee cannot have been injured by anything done or omitted to be done by the appellants. *Jackson & Sharp Co.* v. *Fay,* 20 App. D. C. 105.

5. The only statute in relation to insurance at the time of the issuing of the policy was the act of January 26, 1887. This is an act to regulate insurance in the District of Columbia. This law does not provide for the payment of any license by any insurance company doing business in this District, nor does it make policies void when issued by companies before they are authorized to do business in this District. The court below, therefore, erred in permitting the witness Montague to testify that said company was not authorized to do business in this District in 1898, and in fur-

ther permitting said witness to testify that he did not know said insurance company and had never heard of it. So far as the contract of insurance is in question here, it is absolutely immaterial whether said insurance company was licensed to do business in the District of Columbia or not, or whether it was represented by any member of the board of underwriters of this District, or whether or not said company was doing business in this country, yet the court below, in its instruction to the jury, as embodied in the fourth prayer of the appellee, told the jury if they found that the appellants did not know any of the officers of said company, did not know or attempt to find out whether said company was licensed to do business in the District, and was represented by any member of the board of underwriters, and did not inquire as to whether or not said company was doing business in this country, then the jury were erroneously instructed, as a matter of law, that the defendants were guilty of negligence. And in the fifth prayer, granted in behalf of the appellee, the court further erroneously instructed the jury that it was the duty of the defendants, as a matter of law, to make such inquiries as would bring to their knowledge, among other things, whether said company was licensed to do business in the United States or District of Columbia, and that if they failed to make such inquiries, they were guilty of negligence.

It is also urged that the court below erred in permitting the witness Montague to testify in behalf of appellee to the immaterial fact that said company was not authorized to do business in the District of Columbia, and then in its instructions to the jury to predicate negligence as a matter of law upon immaterial and irrelevant facts, to wit, that said company was not licensed to do business; that the appellants did not know the insurance company's offices, and that the appellants, before delivering the said policy, did not inquire whether or not said company was represented by any member of the board of underwriters in the District of Columbia. Under the third and sixth counts of the declaration,

the question, at most, was one of reasonable diligence on the part of the appellants.

6. It will be seen, on examination of appellee's first, second, third, fourth, fifth, and seventh prayers, that they attempt to enumerate certain acts or omissions, the existence of which is necessary to establish liability of the defendants, but every one of them stop short of a complete definition of such liability in this, that no one of said prayers requires the jury to find that the plaintiff suffered loss by reason of the acts or omissions referred to in the prayers. The jury are in effect told in each of these prayers that if the defendants were guilty of deceit or of negligence in respect to the matter enumerated, then would the plaintiff be entitled to recover. It is obvious that in order to create liability for either deceit or negligence, loss must result, and to tell the jury that they are authorized to find in favor of the plaintiff, without requiring them to find that the plaintiff has suffered loss, is fully misleading. The necessary result would be and was that the jury are led astray and induced to give undue prominence to certain enumerated circumstances without completing the definition of the elements of liability by calling attention to the necessity that the acts defined as deceit or negligence resulted in damage to the plaintiff.

*Mr. John C. Gittings* and *Mr. D. W. Baker* for the appellee.

Mr. Justice Shepard delivered the opinion of the Court:

1. The first assignment of error is on the objections taken to the competency of Mrs. Frye to testify on behalf of her husband, the plaintiff. The objection is that section 1068 of the code making husband and wife competent, but not compellable to testify for or against each other, having been enacted since the cause of action accrued and commencement thereof, cannot affect proceedings therein. There is nothing in this objection. Even in a criminal case, alterations of the law of evidence which " only remove existing restrictions

upon the competency of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure." *Hopt* v. *Utah,* 110 U. S. 574, 590; *Gibson* v. *Mississippi,* 162 U. S. 565, 590.

2. The wife being a competent witness, could undoubtedly testify as she did against her own interest, that the purchase money of the land was furnished by her husband, that she paid no part of the consideration, and that with her knowledge and consent the conveyance to her of a joint interest was for the benefit of her husband, and created, in her, nothing more than a naked legal title, leaving the sole beneficial ownership in him. The admissibility of this evidence may be considered along with that of similar purport on the part of her husband, as regards its relevancy and materiality, as well as with the instructions founded thereon and relating to the effect of the conditions of the policy in respect of the interest and title of the insured.

The court, at the request of plaintiff, instructed the jury that if they found plaintiff was seized in fee simple as sole owner of the beneficial title it was sufficient, and it was no breach of the conditions of the policy, that the legal title was outstanding in his wife. The court refused instructions asked by the defendants, first, that they should find for the defendants, and, second, that if the deed conveyed the land to both husband and wife plaintiff could not recover. Thereupon defendants asked two other instructions, both of which were given.

These were, to find for the defendants, first, if the plaintiff was not the sole owner of the farm in fee simple, or second, if they should believe from the evidence that plaintiff's wife had any beneficial interest in the insured premises as a part owner thereof.

This evidence was clearly sufficient for submission to the jury to find if the conveyance passed a mere legal title to the wife without any beneficial interest whatever, and if the husband became the sole beneficial owner, that is to say, the

holder of both the equitable and legal title to one-half, and the equitable title to the other.

3. This brings us to the main question, raised indirectly by the first instruction that was refused, and directly by the next in order,— whether the equitable title, sought to be established, is sufficient to satisfy the conditions of the policy respecting the ownership of the land upon which the building stood?    We are of opinion that it is.    There was no false statement of the interest of the insured and nothing to indicate an intention to perpetrate a fraud.    His interest was none other than unconditional and sole.    He was the owner — that is to say, the equitable owner — in fee simple of the ground on which the house was situated.    The policy does not say that he shall be seized of the legal title in fee simple; and any doubt in respect of its meaning is to be resolved in favor of the insured.    He was the real, sole, unconditional owner of the ground for all the purposes of insurance which the condition can be fairly presumed as intended to subserve.    Apparently, these were to make sure that the insured shall be the one upon whom the entire loss under the policy would fall in case of injury or total destruction by fire.    The equitable ownership in this case completely answers that requirement.    Plaintiff's interest in caring for the property was no less, and his temptation to destroy it no greater than they would have been had he been invested with perfect title at law as well as in equity.

This view, which commends itself to our judgment, has the support also of weighty authority. *Imp. Fire Ins. Co.* v. *Dunham,* 117 Pa. St. 460, 475; *Watertown F. Ins. Co.* v. *Simons,* 96 Pa. St. 520, 527; *Johannes* v. *Standard F. Ins. Co.,* 70 Wis. 196, 200; *Martin* v. *State Ins. Co.,* 44 N. J. L. 485, 490; *Hartford Fire Ins. Co.* v. *Keating,* 86 Md. 130, 145; 1 May on Ins., Secs. 287, 287 C, 13; Am. & Eng. Encyc. of Law (2d ed.), 231, 232.

4. The next question affecting the contract between the plaintiff and the insurance company arose on the description of the property in the policy as a " two-story frame building."

The defendants asked the court to instruct the jury that

if they found from the evidence that the house insured was not a two-story building, their verdict must be for the defendants.    This was refused and no instruction on this point was given.

The evidence of defendants, as we have seen, tended to show that the building was a " story-and-a-half house," comprising a complete lower story, and what was called a half-story or garret above the same consisting of two partly finished rooms reached by a stairway.

There was no evidence tending to show that such a " half-story," or garret, with windows and rooms capable of occupation, did not make the building a " two-story house," either in common parlance or within the established usage of underwriters.    Nor was there any attempt to show that the alleged misdescription changed or affected the character of the risk in the slightest degree, or influenced the insurer in determining its acceptance and fixing the rate.    In the cases cited on behalf of the appellants there was evidence tending to show that the misdescription, whether in respect of material or the use of the premises, had that operation. We find no error in the denial of the instruction prayed.

5. The verdict having eliminated the question of fraud, the last question to be considered relates to the liability of the defendants for negligence, as charged in the third and sixth counts of the declaration.

The appellants do not controvert the general proposition that brokers who obtain insurance for others are bound to exercise reasonable care and skill in making inquiries and obtaining information concerning the responsibility of the insurer with whom they place the risk, and may be held liable for any loss occasioned by the want of such care.    But they deny the application of the principle to the evidence in this case, and have specially excepted to, and assigned error on, the submission of certain instructions to the jury at the request of the plaintiff.    The first of these reads as follows:

" The jury are further instructed that if they find from the evidence that the defendants were engaged in the business of real estate and insurance brokers in the city of Washington,

District of Columbia, and that plaintiff, knowing that fact obtained the insurance policy mentioned in the declaration and offered in evidence, from an agent of the defendants at the time the said agent represented the said insurance brokers as responsible men and agents of responsible insurance companies, and that the said policy was brought to the plaintiff with the stamp of the defendants upon it, and that the plaintiff, believing in the truth of said representations made by the said defendants' agent (if they believe that Mrs. Owens was such agent) received the policy as set out in the declaration, and that at the time the said insurance policy was delivered the defendants failed to notify plaintiff that it was not one of defendants' companies and that at said time the defendants did not know of the existence of said company, nor made any inquiry in regard to the same; and if they further find that said policy was not a policy of the company of the said defendants or of any company known to them, but was of no value, then they are instructed as matter of law that the plaintiff is entitled to recover in such sum as they may find to be the value of the house at the time of the fire."

The second was, that if the defendants delivered to the plaintiff the policy of the General Fire Insurance Company of Paris, France, not knowing or inquiring as to the existence or nonexistence of said company, and not knowing any of the officers thereof, and did not know or attempt to find out whether said company "was licensed to do business in the District of Columbia, and was represented by any member of the board of underwriters in the District of Columbia, and did not make any inquiry at the time said policy was issued, as to the existence or nonexistence of said company, or the officers thereof, or as to whether or not said company was doing business in this country, then they are instructed as matter of law that the defendants are guilty of negligence," etc.

The third instruction was practically to the same effect, as it declared that it was the duty of the defendants, as mat-

ter of law, to make such inquiries as would bring to their knowledge the aforesaid facts.

(1.) The first special objection is to that part of the second instruction stated, which refers to the nonrepresentation of the insurance company by any member of the board of underwriters of the District.

Conceding that this fact did not constitute a material element of the negligence for which defendants are responsible, yet its inclusion in the instruction was, in our view of the case, harmless error.

(2.) We are aware of no authority bearing directly upon the question as here presented, but, upon principle, in our opinion, actual loss through proof of the insolvency of the foreign company is not a prerequisite condition of plaintiff's recovery.   Solvent or insolvent, the said company, if it has existence at all, is beyond the territorial jurisdiction of the courts of this District, and presumably also of any court of the United States.   The laws of the District, to protect its residents from irresponsible insurance companies, require each company desiring to engage in business to undergo examination of its affairs, and to constitute an agent, domiciled therein, upon whom all process and notices directed to it may be served.   Any company or agent effecting a contract of insurance without the law having been complied with is subject to a penalty of $100.   In view of this law for their protection, it seems to us clear that owners of property have the right to expect that brokers or agents procuring, or issuing policies of insurance upon their property, for value paid, will not deal with an insurance company operating in violation of the law.   In furnishing insurance it is the duty of the broker to know — and the fact is one of easy and certain ascertainment — whether the insurer has the right to engage in business in the District; and so knowing, not to lend his aid, directly or indirectly, to a violation of the law.   The failure of the defendants to make any inquiry, or to exercise any care in this respect when they procured the policy and received the premium was a violation of their plain legal duty, and hence the court did not err in the substantial in-

struction; that, as matter of law, plaintiff was entitled to recover the full amount of his damage. It is no answer to this to say, that notwithstanding the violation of the law the policy is not thereby made void, and the plaintiff might recover upon it in case he can discover the domicile of this alleged insurance company, whose existence as a corporate body, anywhere, is a matter of serious doubt, under all the testimony.

Having found no reversible error in the proceedings on the trial, the judgment will be affirmed, with costs. It is so ordered.                                                            *Affirmed.*