247 P.2d 868

**BROWN v. COOLEY.**
No. 5396.

Supreme Court of New Mexico.
Sept. 5, 1952.

Neal & Girand, Hobbs, for appellant.

Atwood, Malone & Campbell, Roswell, for appellee.

LUJAN, Chief Justice.

Paul S. Brown was the agent for several insurance companies. In addition to being in the insurance business he was the broker for the First Industrial Bank at Denver, Colorado, which later changed its name to

the Citizens Savings Bank. Brown negotiated many loans for Cooley through the above bank. Sam I. Cooley was a trucking contractor and for several years had placed his insurance business in the hands of Brown without any intimation as to the company in which the same was to be placed. During the month of March, 1948, Cooley purchased a Freuhauf trailer and dolly from the Malco Refinery Company of Roswell, New Mexico, on credit, for the sum of $3,000. He immediately called Brown over the long distance telephone at Hobbs, New Mexico, gave him the description and number of the trailer and told him to cover the unit with the usual kind of insurance he carried on other equipment. Cooley had theretofore carried fire, theft, collision, public liability and property damage insurance on all of his equipment, because the bank above mentioned required it. Cooley had an open account with Brown whereby all insurance premiums were charged to him, and later paid by him to Brown. Brown sued and recovered judgment for the amount due him by Cooley, and no appeal was taken therefrom. Cooley counterclaimed and based his action upon the negligent performance of a duty arising out of the oral agreement between the parties. The case was tried to a jury which returned a verdict in favor of Cooley and against Brown. From the judgment based upon said verdict this appeal is prosecuted.

Motions for a directed verdict were made by appellant (cross-defendant) at the close of appellee's (cross-complainant) case and at the close of the entire case. A motion to set aside the verdict and for judgment notwithstanding the verdict was likewise made. These motions were duly denied.

At the outset it must be noted that this action was not brought upon a contract of insurance against the insurer, but is an action against the appellant for his failure to procure collision insurance on certain equipment belonging to appellee as it is alleged he had agreed to do, and as a result of which a considerable loss had been sustained. The pertinent portions of the cross-complaint allege as follows:

"1. Prior to the month of April, 1948 Defendant requested Plaintiff, who was in the business of selling general insurance and handled the insurance upon all of the vehicles of Defendant, to insure one Fruehauf trailer and dolley, the property of the Defendant, against damage by collision and upset and Plaintiff agreed so to do. The reasonable market value of said trailer and dolley was in the sum of $4,000.00.

"3. Plaintiff failed and neglected to cause said trailer and dolley to be insured in accordance with his agreement hereinbefore alleged and by reason thereof, Defendant sustained damage in the sum of $3,350.00, for which

amount Defendant has made demand upon Plaintiff who has failed, neglected and refused to pay said amount to Defendant."

The appellant assigns seven errors which he argues under five points. First, it is contended that the evidence was insufficient to establish an oral contract of insurance. The record discloses that the appellant was engaged in the general insurance business in Hobbs, New Mexico. The appellee was a trucking contractor whose principal business was long distance hauling of gasoline products from the Malco Refinery in Roswell, New Mexico, to various points in the state. That at the time the appellee acquired his first truck, in 1944, and began his trucking business he obtained the financing for the purchase of same and the insurance thereon from appellant, who in turn negotiated the paper on same to a Denver bank. That on this occasion the parties discussed the matter of insurance and it was then agreed that full coverage would be provided, which included collision insurance, as the Denver bank required the same on all vehicles which it financed. The appellant explained this requirement to appellee at that time but was not certain that he had ever told him of any different insurance coverage in connection with units subsequently acquired or insured through him. All units owned by appellee at the time of this loss had been purchased on credit and none had been paid for in full. The course of dealings between appellant and appellee, in which appellant handled all of the insurance for appellee, and in addition the financing on most of his vehicles, continued over the period from December, 1944 to August 1, 1948. During this period of time the appellant had taken care of all of the insurance requirements for appellee on his equipment and his business, and had also acted as a broker in connection with obtaining various financing arrangements for appellee through the bank in Denver, Colorado. The total amount of charges against appellee over that period of time was $69,741.41. When the relation of the parties terminated, appellee was indebted to appellant in the sum of $3,268.79 for insurance premiums on policies that had been issued by appellant for appellee. In March of 1948 appellee purchased from Malco Refinery the trailer and dolly that were involved in this accident for the total sum of $3,000. At the time appellee purchased this equipment he called appellant over long distance telephone and told him to insure the same *"with the usual kind of insurance."* The appellee relied upon appellant to take care of this insurance but appellant did not issue an insurance policy on the equipment. During all of the period covered by their transactions appellee looked to appellant to take care of all of his insurance business and appellant was aware of that fact and was seeking to do so as evidenced by his own statement.

"Q. You knew during the time you handled Mr. Cooley's insurance that he was looking to you to take care of it? A. Yes, sir."

Appellant admitted that he handled all of the insurance business of appellee and knew that he was relying upon him for that protection. He also admitted that the first insurance policy issued included *collision insurance* and that he had told appellee that "full coverage" which included collision insurance was required by the Denver bank on all units financed through it. The appellee testified that he had told appellant of the purchase of the equipment, giving him the number and description of it, and told him to cover it with *the usual kind of insurance we carried.* He further testified that the usual kind of insurance included insurance against collision on all mortgaged equipment. On direct examination he testified:

"Q. What kind of insurance were you carrying on all your equipment at that time? A. Fire, theft, collision, public liability and property damage.

"Q. Did he agree to do that? A. Yes, sir."

On cross-examination he testified:

"Q. And if you requested him to put insurance on, he would have put on just what you wanted? A. Well, I told him I wanted full coverage."

The appellant testified that there was never any such conversation. The court instructed the jury as follows:

"The plaintiff Paul S. Brown denies the existence of said contract and denies he entered into such an agreement with the defendant Sam I. Cooley. The burden is upon the defendant Sam I. Cooley to establish the existence of this contract by a preponderance of the evidence, and in order to recover on his counter-claim in this case he must establish by a preponderance of the evidence the existence of the contract; otherwise your verdict on the counter-claim must be for the plaintiff Paul S. Brown. If, after consideration of all the evidence you determine that said contract existed and that the same was breached by the said plaintiff Paul S. Brown by his failure to obtain the insurance policy which he had agreed to obtain, if you find he agreed to obtain one, and that by reason of said breach the said defendant Sam I. Cooley sustained damages, your verdict on the counter claim should be for the defendant Sam I. Cooley in the amount that you find under the other instructions given to you herein he is entitled to recover."

Thus, the question submitted to the jury was whether or not the disputed conversation took place, that is whether appellee

requested appellant to cover the trailer and dolly with collision insurance and that appellant agreed to provide the same thereon but failed and neglected to do so and that as a consequence thereof appellee suffered the resulting damage complained of. The jury resolved the issues in favor of appellee.

The question of agency must be determined from all of the facts and circumstances of the case, together with the conduct and communications between the parties. If there is substantial evidence to support the jury's verdict with relation to the agency, then the judgment should be affirmed in this regard. A careful examination of the entire record satisfies us that the evidence is sufficient to sustain the verdict when the testimony of the appellee is considered in the light of the course of business dealings which had been carried on between the parties for the preceding four years in connection with the insurance carried on other property belonging to appellee.

The case of Harden v. St. Paul Fire & Marine Ins. Co., 51 N.M. 55, 178 P.2d 578, relied on by appellant as sustaining his contention is not applicable to the instant case. In that case there was in existence a contract of insurance covering various scattered buildings, machinery and supplies of the plaintiff. The request by the owner had been for comprehensive coverage on all property and operations, including additional buildings, equipment and supplies as they were obtained. The local agent and the state agent of the defendant company had agreed to the request, issued the policy on all of the buildings and equipment then in existence and had agreed that as other buildings were completed, riders would be issued covering them into the master policy. The loss in question was a car load of nails which after having been delivered to the insured were destroyed by fire and had not been incorporated into the express terms of the policy by riders. The suit was against the insurance company on the ground that there was in existence a valid oral contract of insurance on the nails, and not against the insurance agent for a breach of contract. It was on this state of facts that this court, speaking through Justice McGhee, said that appellant had abandoned all defenses except that the evidence was insufficient to establish a valid *oral contract of insurance* on the nails. In the case at bar it was not necessary for the appellee to prove the elements of a *contract of insurance* as laid down in the above case. He was only required to prove that he had directed the appellant to obtain the necessary insurance for him and that appellant had agreed to do so but failed and neglected to perform his duty.

In Case v. Ewbanks, Ewbanks & Co., 194 N.C. 775, 140 S.E. 709, 711, the court said:

"Plaintiff is not seeking to hold defendants liable on a contract to insure his building. He seeks to recover of them damages for breach of contract to procure for, and to issue to, him a valid policy. There is no contention by plaintiff that defendants are liable to him on a contract of insurance. He contends that they are liable for negligent failure to procure for and to issue to him, such contract."

See, also Meiselman v. Wicker, 224 N.C. 417, 30 S.E.2d 317; Elam v. Smithdeal Realty & Insurance Company, 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210; Russell v. O'Connor, 120 Minn. 66, 139 N.W. 148.

█ Under the facts and circumstances in this case, it is the determination of this court that Paul S. Brown was the agent of the appellee; that he failed to perform, with reasonable diligence, the instructions received from his principal; that the appellee suffered damages proximately resulting from that neglect, and; that the appellant is liable therefor.

█ It is next contended that the verdict of the jury on the counter-claim in the sum of $3,350 is not supported by the evidence. There is no merit to this contention, inasmuch as collision insurance is for the actual cash value, less deductible, and it was only necessary for appellee to prove the actual cash value of the units in question at the time of their destruction. The appellee testified that the value of the equipment at the time of the accident was $4,000 and this testimony was not disputed.

█ It is next contended that the jury did not follow the instructions of the court as to the measure of damages in favor of appellee, if any. The court instructed the jury that if under the other instructions, they found that appellant did agree to provide the insurance in question and failed to do so, they should bring in a verdict in favor of appellee in the amount that would have been paid him under the insurance policy if it had been obtained not exceeding the value of the property, less the salvage of $400 and less $250 deductible insurance, and not exceeding the sum of $3,350, the amount sued for upon the counter-claim.

Appellant took no exception to the instruction given by the Court nor did he submit a contrary instruction, consequently, the error, if it be error, is not now available to him. In Kiker v. Bank Sav. Life Ins. Co., 37 N.M. 346, 23 P.2d 366, 369, in dealing with a similar situation we said:

"Error is assigned upon the instruction as to the measure of damages; but we cannot consider the several objections here argued. Appellant failed to call them to the attention of the trial court, either by requested instruction proposing the proper measure of damages, or by specific exception to the in-

struction given. Such requirement is too familiar to need citation of precedents, and is too important in our policy of review to be deviated from."

And in the case of Villareal v. Billings, 35 N.M. 267, 294 P. 1111, 1112, it was contended that the evidence in any event established the figure of $82.50 as the maximum damages to which plaintiff would have been entitled, whereas the Court's instruction had submitted the figure of $105 as the possible maximum verdict for this item. We said:

"There was evidence that the cost of digging the unused holes was $82.50. If $105 was included in the judgment for this item, as appellee himself claims it was, and as seems probable, it is excessive to the extent of $22.50. This excess, however, is not available as error because appellant failed to call the trial court's attention to it."

The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as requested. Gay v. Lavina State Bank, 61 Mont. 449, 202 P. 753, 18 A.L.R. 1204; Milliken v. Woodward, 64 N.J.L. 444, 45 A. 796; Lindsay v. Pettigrew, 5 S.D. 500, 59 N.W. 726; Sawyer v. Mayhew, 51 Me. 398; Diamond v. Duncan, Tex.Civ.App., 138 S.W. 429; Mallery v. Frye, 21 App.D.C. 105; Criswell v. Riley, 5 Ind.App. 496, 30 N.E. 1101, 32 N.E. 814; Backus v. Ames, 79 Minn. 145, 81 N. W. 766.

The appellant having failed to present a proper instruction or to except to the instruction given by the court, as to the extent of the damages to which appellee would be entitled on the evidence in the case, he cannot now assign the insufficiency of the evidence to support the verdict as to the amount of damages in an effort to obtain a reversal.

It is next contended that a verdict not sustained by substantial evidence will not be permitted to stand. We agree with this contention. However, this point is disposed of by what has been said under the preceding points and will not be further discussed.

Lastly, it is urged that the court erred in permitting the witness, Joe Lackey, over his objection and exception, to testify that he had requested appellee to secure insurance on the equipment, involved herein, sold to him by the Malco Refinery Company, on the grounds that it was a self-serving declaration and purely hearsay. The witness testified:

"Q. Did you make any requirement in connection with that sale as to insurance?

"Mr. Neal: We object as that would be a self serving declaration by Mr. Cooley, and we think it serves to prove

no material issue in this case and it is purely hearsay.

* * * * * *

"The Court:—Overruled.

"Mr. Neal:—We except.

"Q. What is your answer? A. I asked Mr. Cooley to be sure the unit was covered.

"Q. Covered by insurance? A. Yes, sir, that is only natural for anyone selling."

The questions and answers are not objectionable on either ground. It is neither hearsay nor a self serving declaration. It was proper for Cooley to show his vendor had required him to obtain insurance on the purchased articles. See Citizens' Bank of Clovis v. Brown, 38 N.M. 310, 32 P.2d 755.

A careful and laborious examination of the record satisfies us that the case has been carefully and well tried, and is free from any substantial or material error that should cause a reversal.

Appellee did all that was necessary, and all that he would have been required to do, towards securing the insurance for which he had applied. He had a right to rely, and did rely upon appellant to do what he had promised and agreed to perform; and after the loss had occurred, and when he applied to appellant to have the same adjusted, he learned for the first time that the property had not been insured. The law

of this case, applied to the facts before us, imposes upon appellant a liability, and the judgment is affirmed.

It Is So Ordered.

SADLER, McGHEE, COMPTON and COORS, JJ., concur.