607 P.2d 615

**Lem FRYAR and Danny L. Fryar, d/b/a Fryar Logging Company, Plaintiffs-Appellees,**

**v.**

**EMPLOYERS INSURANCE OF WAUSAU and Marsh & McLennan, Inc., Defendants-Appellants, (two cases).**

**Nos. 12459, 12471.**

Supreme Court of New Mexico.

March 6, 1980.

Rodey, Dickason, Sloan, Akin & Robb, Jonathan W. Hewes, Stanley N. Hatch, Albuquerque, for Employers Insurance of Wausau, appellant.

Johnson & Lanphere, D. James Sorenson, Albuquerque, for Marsh & McLennan, Inc., appellant.

Gallagher, Casados & Martin, J. E. Casados, Albuquerque, for appellees.

## OPINION

SOSA, Chief Justice.

The general issues presented in this case are (1) whether the insurance broker had authority to modify an insurance contract for an insurance company, and (2) if he did, whether the insureds reasonably relied to their detriment upon representations by the broker. We hold that under the facts of this case the broker was an agent of the insurance company and legally bound the company to a modification of the insurance contract.

Plaintiff-appellees Lem and Danny Fryar (Fryars) entered into a partnership to conduct a logging business in September of 1973. The Fryars were at that time contacted by appellants Marsh & McLennan, Inc. (broker), an insurance brokerage firm. The broker subsequently obtained a workmen's compensation policy for the Fryars from Employers Insurance of Wausau (insurors). The policy provided that a portion of the premium would be refunded to the insured if the claims on the policy were low, and that an additional premium would be charged if the claims were high. The refund was to be computed six months after each annual period of the policy, and if due, paid as soon as practicable thereafter. The policy also contained a clause which attempted to provide that the insureds would not be entitled to their refund if the policy was cancelled before a three-year period had expired.

In 1974, a year after the policy took effect, the Fryars asked the broker if their "dividend" for the year could be used to pay the premiums of a general liability policy which they also carried with the insurors. The broker, after contacting the insurors, wrote to the Fryars and told them that the "dividend" could be so used, because it would be forthcoming in November of 1974, and could then be used to pay the general insurance premium. Relying upon this, the Fryars then repaired some of their equipment with the money they ordinarily would have used to pay insurance premiums, though the repairs were not essential at the time. The company, however, did not pay the refund in November as promised. The Fryars continued to pay premiums on the general insurance policy, but could not afford the premium on the workmen's compensation policy, so they requested that the insurors cancel that policy. The insurors then refused to pay the Fryars the refund of premium due them, citing the provision in the policy which stated the refund would not be paid if the policy was cancelled before three years. The trial court found this provision to be an unenforceable penalty; found the policy to be adhesive and ambiguous, and found that the broker was an agent of insurors who bound the insurors to pay the refund in November of 1974. The court awarded a judgment jointly and severally against both the broker and the insuror for $52,042.07, which was the amount of the refund the Fryars would have received had there not been a breach of contract.

I. We first discuss whether the broker had authority to modify the contract. The insurors argue that Section 59–5–37, N.M.S. A.1978 applies and precludes a finding that the broker acted as an agent of the insuror. The section reads in part:

[A]ny broker licensed to transact an insurance business in the state of New Mexico shall, in any controversy between any insured or his beneficiary and the company, issuing the insurance through its licensed agent at the request of said broker, be held to be the agent of the insured, anything in the application or policy to the contrary notwithstanding.

The statute is remedial in nature, and as such, is intended to "right" certain "wrongs." We believe the statute is inapplicable to the facts of this case because they do not constitute the "wrong" intended to be covered by the statute. As was stated by the United States Supreme Court in considering the applicability of a statute deeming certain persons to be agents of the insurors:

"The purpose of the statute was to settle, as between the parties to the contract of insurance, the relation of the agents through whom the negotiations were conducted. Many insurance companies pro-

vided in their applications and policies that the agent by whom the application was procured should be regarded as the agent of the assured. Under that provision they were able to avail themselves, in many cases of loss, of defenses which would not have been available if the solicitor had been regarded as their agent, and many cases of apparent hardship and injustice arose under its enforcement, and that is the evil which was intended to be remedied by the statute, and it ought to be interpreted as to accomplish that result."

*Continental Ins. Co. v. Chamberlain*, 132 U.S. 304, 310, 10 S.Ct. 87, 89, 33 L.Ed. 341 (1889), quoting from *St. Paul F. & M. Ins. Co. v. Shaver*, 76 Iowa 282, 286, 41 N.W. 19, 20 (1888). We believe that Section 59–5–37 has as its purpose the protection of insureds. Accordingly, Section 59–5–37 should not be construed or applied in a manner which would allow insurance companies to mislead those who reasonably rely on their agent's representations. Additionally, we believe that the statute should be held to a restrictive interpretation because it is in derogation of the common law of agency. *See* 3 Sutherland Statutory Construction, § 61.01 (4th ed. C. Sands 1974). The statute states that in a controversy between a company *issuing the insurance through its licensed agent* at the request of the broker, and the insured, the broker is to be held to be an agent of the insured. In this case, there is testimony that the broker dealt directly with the insurors, and not through an agent licensed in New Mexico. The statute, therefore, if restrictively interpreted, does not apply here. We instead follow established case law.

 Normally, the question of agency is one of fact. *Brown v. Cooley*, 56 N.M. 630, 247 P.2d 868 (1952); *State v. De Baca*, 82 N.M. 727, 487 P.2d 155 (Ct.App.1971). It is to be determined from the facts and circumstances of each case, together with the conduct and communications between the parties. *Brown v. Cooley, supra*, 56 N.M. at 635, 247 P.2d at 871. If there is substantial evidence to support the verdict of the finder of fact, the finding will not be

disturbed on appeal. *Id.* The trial court determined that the broker acted as an agent of the insuror in making the representation that the refund would be paid in November, 1974. We find that there is substantial evidence in the record to support a determination that the broker had apparent authority, manifested by the acts of the insuror toward the insured, to modify the contract. *See* 2 Williston on Contracts § 277 (3rd ed. Jaeger 1959); Restatement (Second) of Agency §§ 8, 27 (1957). There was evidence that the policy itself indicated that the broker was the representative of the insuror. There was also evidence that the insurance company knew of the modification by the broker, and consented or acquiesced to it. As we have quoted before,

> "[a] principal is not only bound by the acts of his agent, general or special, within the authority which he has given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing." (Citation omitted.)

*Raulie v. Jackson-Horne Grocery*, 48 N.M. 556, 561, 154 P.2d 231, 234–35 (1944), quoting from *Petersen v. Pacific American Fisheries*, 108 Wash. 63, 68, 183 P. 79, 80 (1919). We hold that the broker was the agent of the insuror for the purpose of modifying the contract.

II. The trial court also held that the Fryars reasonably relied to their detriment upon the modification made by the broker. There is evidence that the Fryars expended money on equipment repairs with the reasonable belief that they could pay insurance premiums with the refund due them. When the refund was not forthcoming, they could not afford the premiums, and were forced to terminate the policy. The insurors argue that the termination was voluntary and not caused by them. They also argue that a clause in the policy provided that no modification could be made without written consent from a corporate officer.

We believe that the broker did have the apparent authority to modify the contract, and that the evidence supports a finding that the Fryars relied on the modification. The reliance was the expenditure of money which otherwise could have been used to pay premiums. The breach of the modification resulted in the subsequent termination of the policy and the loss of the refund, regardless of who actually requested that the policy be terminated. The insurors are estopped from now claiming that the policy itself disallowed modifications, except by company officers. There is evidence that the insurors knew that the broker made the modification of the contract, and that the modification would be relied upon. The insurors, not taking any steps to prevent the reliance cannot now claim that the contract prevented the modification. Restatement (Second) of Agency § 8B (1957). The insurors are liable for damages caused by the representations of the broker, which resulted in the reasonable and detrimental reliance by the Fryars.

The trial court held the broker and the insurors to be jointly and severally liable. This was error.

> [I]t is well established that an agent acting within his authority for a disclosed principal is not personally liable unless he was expressly made a party to the contract or unless he conducts himself in such a manner as to indicate an intent to be bound. (Citations omitted.)

*Roller v. Smith*, 88 N.M. 572, 573, 544 P.2d 287, 288 (Ct.App.1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975). In the present case, the broker acted within the apparent scope of his authority, though possibly not within the scope of any actual authority. There is no evidence that the broker manifested any intent to be bound by his representations. The broker therefore is not liable to the Fryars. *Id.*

The judgment of the trial court is affirmed as to Employers Insurance of Wausau and reversed and remanded as to Marsh and McLennan, Inc.

IT IS SO ORDERED.

FEDERICI and FELTER, JJ., concur.