693 P.2d 575

Orville C. McCALLISTER and Judith
A. McCallister, Plaintiffs-Appellants,
Cross-Appellees,

v.

D.R. LUSK, Doris A. Lusk, Harry J.
Gannon, Nora C. Wilson,
Defendants-Appellees, Cross-Appellants,

v.

Robert O. MOORE and Brenda Moore,
Defendants-Appellees, Cross-Appellees.

No. 15336.

Supreme Court of New Mexico.

Sept. 24, 1984.

Rehearing Denied Oct. 25, 1984.

Martin B. Paskind, Paskind, Lynch, Dow & Printz, P.A., Albuquerque, for plaintiffs-appellants, cross-appellees McAllisters.

Robert C. Hanna, Mei Negishi, Albuquerque, for defendants-appellees, cross-appellants Lusks, et al.

Melissa J. Fassett, Amanda J. Ashford, Campbell, Pica & Olson, Albuquerque, for defendants-appellees, cross-appellees Moores.

## DECISION

WALTERS, Justice.

On April 1, 1979, Orville and Judith McCallister (McCallister) sold a leasehold estate to Robert and Brenda Moore (Moores), receiving a promissory note as consideration. On June 6, 1981, Moores sold the property to D.R. and Doris Lusk, et al. (Lusks), by a real estate contract under which Lusks agreed to assume and pay the mortgage from Moores to McCallister.

McCallister received the payment due on December 1, 1981, on January 4, 1982, and he rejected it. On January 5th he brought suit against Moores and Lusks to foreclose the mortgage, alleging failure of the defendants to make payments in accordance with the terms of the original transaction. Lusks counterclaimed and cross-claimed, pleading bad faith and intentional interference with contractual relations by both McCallister and Moores, and alleging negligence on the part of Moores. Moores cross-claimed against Lusks to accelerate the payments due them under the terms of their real estate contract with Lusks.

The trial court dismissed all claims with prejudice. McCallister appeals. Lusks cross-appeal. We affirm in part and reverse in part.

At the heart of this appeal is the correctness of the trial court's conclusion that First Escrow, Inc. (referred to in the real estate contract between Moores and Lusks, and from whom McCallister in January, 1982 received the payment due on December 1, 1981), was "the agent of McCallister by estoppel." The evidence was that Lusks forwarded the payment to First Escrow on December 10 or 11, 1981, but that McCallister did not receive payment until January 4, 1982. We hold that the facts of this case do not warrant the court's conclusion of agency.

The elements of estoppel which relate to the party estopped (McCallister) are:

(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party ...; and (3) knowledge, actual or constructive, of the real facts * * *.

*Capo v. Century Life Insurance Co.*, 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980). The elements of estoppel which relate to the party claiming estoppel (Lusks) are:

(1) lack of knowledge and of means of knowledge of the truth as to the facts in question * * *; (2) reliance upon the conduct of the party estopped * * *; and (3) action based thereon of such a character as to change its position prejudicially.

*Id.*

McCallister had "in the neighborhood of fifty" other real estate transactions upon which he was receiving installment payments, some of which were serviced by First Escrow. The trial court did not find, however, nor is there any evidence in the record to support a finding, that McCallister, at the time that Moores and Lusks created the escrow arrangement as part of the Moore-Lusk real estate transaction, or

at any time afterward, represented to either the Moores or Lusks that First Escrow, Inc. was to be considered McCallister's agent for the receipt of payment on the McCallister-Moore agreement. In fact, McCallister had nothing to do with the sale of the leasehold estate by Moores to Lusks, or with the terms of the real estate contract and the escrow agreement entered into between those two parties, nor did he know anything about the Moore-Lusk sale until some time after it had occurred.

Further, there was no finding by the trial court nor was there any evidence that Lusks or Moores relied upon the conduct of McCallister in creating the escrow agreement as part of their real estate contract; or that Lusks changed its position with respect to the use of an escrow company on the basis of any representations made by McCallister; or that Lusks lacked the knowledge or the means to discover the knowledge of either the ten-day default provision in the McCallister-Moore mortgage note or the conduct of the escrow company with respect to McCallister.

The agreement between Moores and Lusks specifically provided that Lusk assume and pay the McCallister-Moore mortgage and loan agreement. It recites that the loan agreement between McCallister and Moore "defines the Mortgage" and that it was attached as a part of the Moore-Lusk agreement. Moore was required to pay McCallister on the first of the month, commencing on May 1, 1981, and Lusks, in its agreement with Moores, assumed that obligation. According to McCallister, he was concerned "that I could receive my payments in accordance with my contract [with Moore] and that the mortgagee and leaseholders to whom I'm responsible would receive their payments in accordance with their contracts." Neither Moores nor Lusks paid McCallister the December, 1981 payment in a timely fashion.

In concluding that First Escrow was McCallister's agent "by estoppel," the trial court found that McCallister did not advise Lusks prior to December 10, 1981, that First Escrow, Inc. was not approved as an

agent to receive payment for McCallister, and that the McCallisters "acquiesced in the use of First Escrow, Inc. as their agent with respect to the payment in question for December, 1981." Lusks argue, relying on *Fryar v. Employers Insurance Of Wausau*, 94 N.M. 77, 607 P.2d 615 (1980), and the Restatement (Second) of Agency, Section 8B (1957), cited therein, that McCallister's failure to disabuse Lusks of the notion that the escrow company was the agent of McCallister for receipt of payments due under the real estate contract amounted to acquiescence in the creation of an agency relationship between McCallister and First Escrow, Inc.

■ The facts of this case and the findings of the trial court simply do not support a conclusion that McCallister is to be "estopped" from bringing his foreclosure action. The elements of estoppel to be applied to the party denying its application, and to the party claiming its application, are not present in this case.

■ The finding of the trial court that the McCallisters "acquiesced in the use of First Escrow, Inc. *as their agent*" is not supported by the evidence. There was *no* evidence that the McCallisters ever considered payment to First Escrow to be payment to them. In *Fryar*, the facts showed an agency between the insuror and the broker to exist *before* the agent exceeded his authority, and that the insuror consented to the broker's representations to the insured. We held there that the insurance broker had "apparent authority, manifested by the acts of the insuror toward the insured, to modify the contract." *Id.* at 80, 607 P.2d at 618.

■ In this case McCallister's only tenuous connection with Lusks was the acceptance of Moore's monthly payments made by Lusks and forwarded by the escrow company. Mere acceptance of payments from a third party does not *create an agency relationship* between the "acceptor" and the third party, nor does it amount to "acquiescence" in the creation of an agency relationship between the accep-

tor and the conduit through which the payment comes. Lusks cite to us no authority to support such a proposition.

Common sense rejects it. We can imagine an example: A, a customer of the telephone company, regularly gives his neighbor a check or cash to pay A's monthly telephone bill, and the neighbor delivers it to the telephone company when he pays his own bill. The telephone company regularly accepts delivery from the neighbor and credits A's account. One month the neighbor fails to deliver A's payment to the telephone company. Is the telephone company estopped to deny or demand payment of A's telephone bill that month because the neighbor failed to deliver A's payment? By what legal principle should the agreement between A and his neighbor bind the telephone company simply because prior deliveries of payment on A's behalf had been accepted by the company? How had A changed his position toward the telephone company by reason of his neighbor's delivery, as a result of any action of the telephone company? Would the telephone company have any legally cognizable action against the neighbor for A's non-payment, or would only A have that remedy? And would not A still be responsible to the telephone company under the telephone service agreement between those two parties? Substitute McCallister for the telephone company; First Escrow for the neighbor; and Moores and Lusks for A, and all of those questions apply with equal force here.

Section 14 D of the Restatement (Second) of Agency provides that "[a]n escrow holder is not as such an agent of either party *to the transaction* [but is "similar to a stakeholder"] until the event occurs which terminates the escrow relation," and then he "becomes the agent *for each party* as to the property *which each has deposited with him*." The parties to the escrow agreement in this case were Moores and Lusks, not McCallister. Comment (c) of Section 14 D then distinguishes an escrow holder from an agent, and from one who receives property to be delivered to a third person without any agreement with the

third person, as was the case here. In this latter instance, the "escrow holder" is defined to be "either an agent of the transferor," or "a bailee or *non-agent trustee* for the third person." The third person in this decision is McCallister; the transferor is Lusks.

■ Lusks' reliance on Section 8(B) of the Restatement (Second) of Agency to answer some of the questions posed in our example is likewise misplaced. That section reads:

(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

(a) he intentionally or carelessly caused such belief, or

(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.

(2) * * * *

(3) Change of position, as the phrase is used in the restatement of this subject, indicates payment of money, expenditure of labor, suffering a loss or subjection to legal liability.

This section clearly refers to the authority of an *existing* agent to bind his *existing* principal to a transaction beyond the agent's actual authority. Section 8(B) is merely a subsection of the Restatements' Section 8, entitled "Apparent Authority," and discusses consequences flowing from misconceptions of the extent of an existing agent's authority. The incorporation of the escrow agreement into the Moore-Lusk real estate contract was not "purported" to have been done on McCallister's account. The escrow instructions were to be "[a]s the Owner [Moores] direct." McCallister's first awareness of the terms of the Moore-Lusk agreement, and of the provision that First Escrow would be the fiduciary agent to accept Lusks' payment under the Moore-Lusk agreement, was on December 12, 1981, eleven days after McCallister's De-

cember payment from Moore was due. How could McCallister have caused Lusks to believe anything regarding the effect of payment to the escrow company, or how could McCallister's silence regarding Lusks' purported belief that Lusks could make payments after the first of the month, have any bearing on McCallister's being bound by the payment schedule of an escrow transaction that McCallister knew nothing about?

■ We point out, additionally, that there is no evidence in the record that Lusks indeed changed their position in reliance on an agency relationship between McCallister and the escrow company. Payments by Lusks had previously been received not later than the 7th of the month, well within the ten-day grace period and before McCallister was entitled to accelerate payments in accordance with the terms of his contract with Moores.

■ We stated in *Capo* that "[t]o invoke the doctrine of estoppel by silence it must first be established that the one against whom the doctrine is being invoked had a duty to speak.... It must be shown that the party maintaining silence knew that the other party was relying upon that silence." *Id.* 94 N.M. at 377, 610 P.2d at 1206 (citations omitted). We are cited to no authority which, under the facts of this case, would establish the existence of a duty to speak on the part of McCallister. Nor is there substantial evidence to support a finding that McCallister knew that either Moores or Lusks were relying on McCallister's silence as a basis for using the escrow company to meet their payment obligations under the real estate contract. The evidence is completely to the contrary. McCallister had absolutely no knowledge of defendants' reliance on anything.

■ Under the McCallister-Moore contract, Moore had the obligation to pay McCallister on the first of each month. Under the Moore-Lusk contract, Lusk assumed Moores' obligation to McCallister, but McCallister was never asked and never agreed to substitute Lusks for Moores. In-

deed, he did not know Moores had sold their interest in the property until after the sale had been made. McCallister was entitled to foreclose against his buyers, the Moores, and against the parties in possession, the Lusks.

We reverse the trial court's order dismissing McCallister's suit to foreclose the mortgage. We affirm the trial court's dismissal of Lusks' counterclaim against McCallister. The cross-claims of Lusks and Moores shall be reinstated. The case is remanded for proceedings in accordance with this decision.

IT IS SO ORDERED.

SOSA, Senior Justice, and C. FINCHER NEAL, J. (by designation), concur.

FEDERICI, C.J., and STOWERS, J., dissent.